NEW YORK LIFE INS. CO. v. BLAYLOCK.*

(Division B. Oct. 25, 1926. Suggestion of Error Overruled Dec. 6, 1926.)

[110 So. 432. No. 25610.]

1. INSURANCE. *Under option in life policy, on default in payment of premium, held "surrender charge" was not to be deducted from reserve, where policy was automatically continued and not surrendered.*

Under option given by life policy, on default in payment of premium, the policy not being surrendered for cash surrender value or paid-up insurance, and so automatically continued, *held* "surrender charge" could not be deducted from reserve, relative to time reserve would continue policy.

2. INSURANCE.

Of two reasonable constructions of contract of insurance, the one favorable to insured must be adopted.

3. INSURANCE.

Under option given by life policy on default in payment of premium, to have insurance continued for term purchasable by reserve, with deduction for money borrowed, *held* deduction is to be from reserve, and not from face of policy.

4. INSURANCE. *Dividend paid insured without beneficiary's consent held not to be applied to extend insurance on default.*

Under option in life policy, in which insured had right to change beneficiary, *held* dividend paid insured without beneficiary's consent after default in payment of premium should not be applied to extend the insurance.

*Corpus Juris-Cyc. References: Insurance, 32 C. J., p. 1152, n. 95. Life Insurance, 37 C. J., p. 512, n. 5; p. 513, n. 14; p. 514, n. 27; Construction of insurance policy one most favorable to insured and against insurer will be adopted, see 14 R. C. L. 926; 3 R. C. L. Supp. 316; 4 R. C. L. Supp. 931; 5 R. C. L. Supp. 787; 6 R. C. L. Supp. 840.

APPEAL from circuit court of Calhoun county.
HON. T. E. PEGRAM, Judge.

Action by Cora M. Blaylock against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*A. H. Longino,* for appellant. Also *Wells, Stevens & Jones* for Lamar Life Insurance Company and Metropolitan Life Insurance Company, *amici curiae.*

Appellant represents that it has perfect right to pay the said dividend to the insured upon his election to receive it, because it was part of the contract to do so. Besides, the policy expressly permits change to be made in the beneficiary thereto and that for the reason the plaintiff in this case could have no vested right in the policy or the dividend until after the death of the insured without a change in the beneficiary; and that it is immaterial that no change in the beneficiary had actually

been made. 2 May on Insurance, section 399, page 893 and note 97; *Fountain* v. *Security Mutual*, 93 S. E. 118.

By the express terms of the contract between the parties the appellant was authorized to deduct the surrender charge of seven dollars and fifty cents per thousand from the said reserve. The contract in this respect is plain and unambiguous, and in making such deduction the plaintiff had the perfect right to do so, since it was agreed to in writing between the parties.

Insurance contracts made by the parties, unless in violation of law or public policy, should be enforced as written by the parties the same as any other contract. The fact that there was no formal surrender of the policy by the insured was immaterial because no such requirement entered into the contract between the parties. After the lapse of the policy as aforesaid the surrender charge under the contract became a fixed right against the legal reserve in favor of the defendant.

Appellant deems it unnecessary to devote further time to the appellee's contention in the lower court that the indebtedness of the insured to the company should be deducted from the face of the policy and not from the surrender value thereto after the lapse of the policy. The lower court decided against that view and in doing so is supported by the great weight of authority.

*J. H. Ford* and *W. J. Evans*, for appellee.

I. In the consideration of this case two controlling principles of law as to the construction of the insurance contract involved should be kept constantly in mind: (1) Forfeitures are not favored in law; (2) the provisions of the policy are to be liberally construed in favor of the insured and beneficiary; and when the language used is inconsistent or ambiguous, that construction of its terms most favorable to insured and beneficiary is to be adopted. 1 Cooley's Brief on Insurance, page 636; *McMaster* v. *N. Y. Life Ins. Co.*, 183 U. S. 25, 46 L. Ed. 64; *Mutual*

*Life Ins. Co.* v. *Breland,* 117 Miss 479, 78 So. 362; *Columbian Woodmen* v. *Bunch,* 115 Miss. 512, 76 So. 540.

II.   Indebtedness against policy fully paid and satisfied by deducting same from face amount of policy. When the indebtedness was deducted from the face amount of the policy, after default in payment of the premium of February 17, 1915, it was "paid and satisfied" for all time and all purposes since it did not equal the cash surrender value thereof.

III.   After deducting amount of indebtedness from face amount of policy, the remainder continued in force as extended insurance for the full period of thirteen years and eleven months as provided in the table. *Francis* v. *Prudential Ins. Co.,* 243 Pa. 280, 90 Atl. 205.

IV.   Under the provisions of the policy the indebtedness against it could not be deducted from reserve to reduce term for which extended insurance would continue. *Francis* v. *Prudential Ins. Co.,* 243 Pa. 280, 90 Atl. 205; 6 Cooley's Brief on Insurance, page 866; *Hay* v. *Meridian Life & Trust Co.,* 57 Ind. App. 536, 101 N. E. 65 (1913), re-affirmed 105 N. E. 919; *Bozeman* v. *Prudential Ins. Co.,* 130 Ky. 562, 113 S. W. 836 (1908).

V.   Deduction of indebtedness from both reserve and face amount of policy was an unlawful discrimination against the borrowing policyholder, and void as against public policy.

It is not necessary to cite authorities from other states to show that a discrimination between a borrowing and a non-borrowing policyholder is unlawful for the reason that our statute so declares in this state. Section 5064, Hemingway's Code (section 2600, Code of 1906). See, also, *Security Life Ins. Co.* v. *Watkins,* 224 S. W. 462 (Ky. 1920).

VI.   Provisions of policy as to method of settlement of indebtedness and of extended insurance in such case are inconsistent, in confusion and ambiguous.   It was held in *Hays* v. *Meridian Life & Trust Co.,* 57 Ind. App. 536, 101 N. E. 65, 105 N. E. 919, that a policy that provides that upon default of payment of premiums, extended insurance would be granted for the full amount of the policy for the period set forth in the table of values, but elsewhere provides that such period shall be reduced according to any indebtedness due on the policy, is ambiguous and that such indebtedness would be deducted from the "face amount" of the policy and not from the reserve or cash surrender value.

VII.   *Surrender charge.*   Appellant not only claims that it had the right to deduct the indebtedness from both the face amount of the policy and also from the reserve thereon in shortening the period for which extended insurance would run, but also that a "surrender charge" of fifteen dollars should be deducted from the reserve thereon.   It is not controverted that if the deduction of such surrender charge is not permitted, the extended insurance was in force at the time of the death of the insured.

We contend that since the policy was not surrendered in this case, no surrender charge should be deducted, and this was the finding of the lower court on that feature of the case.   In our view, after the policy had been in force more than three years, after default in payment of premiums, the insured had a right to elect within three months, but no later, to surrender the policy and accept a cash surrender value under option (a), or take nonparticipating paid-up insurance under option (c), or if he did "not *surrender* this policy to the company at the home office for its cash surrender as provided in option (c)" just let it lapse and continue under option (b) without surrendering it.

It is evident that a surrender charge was contemplated only in the event of surrender of the policy.

VIII.   Where a policy of life insurance is taken out to a designated beneficiary without reserving the right to change the beneficiary, a change in beneficiary, or loan on the policy, or payment of dividends, or other settlement of same, cannot be made without the consent of the beneficiary. *Jackson* v. *Williams,* 77 Miss. 398, 26 So. 965, 78 A. S. R. 530; *Grego* v. *Grego,* 78 Miss. 443, 28 So. 817; *Johnson* v. *Bacon,* 92 Miss. 156, 45 So. 858; *Mutual Ben. Life Ins. Co.* v. *Willoughby,* 99 Miss. 98, 54 So. 834.

IX.   Where the right to change the beneficiary is reserved in the policy, insured may change the beneficiary, procure a loan on the policy, assign it, receive the dividends thereon, etc., so far as so provided in the policy without the consent of the beneficiary. *Lamr Life Ins. Co.* v. *Moody,* 122 Miss. 99, 84 So. 135; *Bank of Belzoni* v. *Hodges,* 132 Miss. 238, 96 So. 97.

It is seen from the terms of the policy that the right to change the beneficiary only existed where there was no existing assignment of the policy. In other words, so long as there was an existing assignment of the policy, or when it ceased to be in force, the insured had no right to change the beneficiary and during such time, the beneficiary had a vested right in the policy and all its benefits and any dividends accruing thereon could not be paid to insured without the consent of the beneficiary and to her detriment.

This policy having been assigned to the company as security for the indebtedness against it, which was existing at the time, the dividend is claimed to have been paid, such dividend could not be paid to insured to her detriment without the consent of the beneficiary.

Holden, P. J., delivered the opinion of the court.

The appellee, Mrs. Cora M. Blaylock, recovered judgment as beneficiary in an insurance policy on the life of

her husband, Wm. H. Blaylock, against the appellant, insurance company, from which judgment the insurance company appeals.

The appellant contends that the policy had lapsed and was void at the time the insured died because of default in the payment of the premium thereon.

The appellee urges that the policy was valid when the insured died, because the insurance had been extended beyond the date of the death of the insured by the automatic application of the reserve or "cash surrender value" due on the policy at the time of the lapse, under clause (b) of the provisions of the policy, "Options on Surrender or Lapse," on the second page of the policy. The said provisions of the policy are here quoted as follows:

"*Options on Surrender or Lapse.*—After this policy shall have been in force three full years, the owner may elect within three months after any default in payment of premium, but not later, either

"(a)   To accept the cash surrender value; or,

"(b)   To have insurance for the face amount of this policy plus any outstanding dividend additions and less any indebtedness to the company hereon continue in force from the date of default for such term as is hereinafter provided, but without future participation and without the right to loans or cash surrender value; or

"(c)   To purchase nonparticipating, paid-up insurance payable at the same time and on the same conditions as this policy.

"The cash surrender value, after premiums have been paid for three years or more, will be the reserve on this policy and on any dividend additions thereto, at the date of default, computed according to the American Table of Mortality, with interest at the rate of three per centum per annum, less the amount of any indebtedness to the company, and less a surrender charge at the following rate per thousand dollars of insurance: After three years fifteen dollars; after four years twelve dol-

lars and fifty cents; after five or six years ten dollars; after seven years seven dollars and fifty cents; after eight years five dollars; after nine years two dollars and fifty cents. However, in no case shall the surrender charge be more than one-fifth of the reserve. After premiums have been paid for ten years or more, the cash surrender value shall be equal to the full reserve calculated as above, less the amount of any indebtedness.

"The term for which said insurance will be continued, or the amount of paid-up insurance, will be such as said cash surrender value will purchase as a net single premium at the attained age of the insured according to the American Table of Mortality, with interest at the rate of three per centum per annum. If the insured shall not, within three months from default, surrender this policy to the company at the home office for its cash surrender value as provided in option (a) or for paid-up insurance as provided in option (c), the insurance will be continued as provided in option (b)."

The main question presented on the appeal, which will be decisive of the case, is whether or not the "surrender charge" of fifteen dollars maybe deducted by the company from the reserve or cash amount due the insured on the policy at the time of the lapse, or should it be applied in extending the insurance under clause (b) of the provisions, "Options on Surrender or Lapse," of the policy, where there has been no actual surrender of the policy, but the insurance is continued under said clause (b) to some future date as provided.

In the case before us the policy became void several months before the death of the insured if the fifteen dollars as a "surrender charge" could be deducted from the amount due on the policy and not applied to extended insurance; but if the "surrender charge" of fifteen dollars in this case could not be retained by the company, then the insurance for the face amount of the policy was extended to a date after the death of the insured; so the question then is whether the fifteen dollars claimed by

the company as a "surrender charge" should be applied to extended insurance under the terms of the policy, or whether the company should be allowed to retain that amount, in which event the policy would have become void before the death of the insured.

We have been unable to find any decision of the question, counsel cite none, and we are therefore left to construe the provisions of the policy from the language used; and after a careful consideration of the proposition we are convinced that the fifteen dollar "surrender charge" cannot be collected by the insurance company, because, as we see it, there was no actual surrender of the policy, but the default in the payment of the premium amounted to a mere lapse of the policy, and under the said clause (b) the insurance was automatically extended, or "the insurance was continued as provided in option (b)," as expressed by the provisions of the policy mentioned, the insured having failed to elect to come under clause (a) or clause (c); therefore no "surrender charge" could be collected from the amount due the insured on the policy at the time of the lapse, because there was no surrender of the policy.

We do not understand the provisions of the policy to mean that the fifteen dollar "surrender charge" could be retained by the company where the policy merely lapsed and clause (b) extending the insurance automatically applied. It seems clear to us that this "surrender charge" can be collected by the company only where the policy is surrendered for cash, as provided in clause (a) or where the insured elects, clause (c), which latter question we do not decide, but the surrender charge cannot be retained where the insurance is continued under clause (b) as it was in the case before us.

If the provisions in the policy under the designation "Options on Surrender or Lapse" can be reasonably construed to mean that when there is a lapse and the insurance is continued under clause (b) that this constitutes a surrender of the policy, or that the intention of

the provision is that the lapse and continuance of the insurance shall warrant the charge of the fifteen dollars as a surrender or lapse charge, still the other construction that we have above placed upon the provision, namely, that the "surrender charge" is not to be deducted by the company unless the policy is actually surrendered and not continued under clause (b) as it is in the case before us, is also a reasonable construction of the provision; and when there are two reasonable constructions of the contract of insurance, one favorable to the insurance company and the other to the insured, it is the duty of the courts to adopt the one favorable to the insured, because the contract is to be construed most strongly against the writer of it. This is the universal rule, as we find it in all jurisdictions. Therefore we think, in the instant case, that the surrender charge cannot be claimed by the insurance company because there was no surrender of the policy; but if mistaken in that view, then it is our opinion that even if the construction contended for by the appellant is a reasonable one, still it is the duty of the court to adopt the other reasonable one favorable to the validity of the policy.

Appellee contends that the three hundred dollars borrowed by the insured from the company upon the policy should not have been deducted from the reserve, but that it should have been deducted from the face amount of the policy, and that had this been done the remainder of the reserve would have been sufficient to continue the policy in force as extended insurance for a full period of thirteen years and eleven months after the date of default in the payment of the premium. Of course, if this view was sound the insurance policy would have been, for this reason, in force and valid at the death of the insured; but we think the position is untenable.

It is our opinion that whatever debt was due by the insured for money borrowed on the policy should have been deducted from the reserve or cash surrender value of the policy at the time when default was made in the

payment of the premium, and the balance applied to the extended insurance. The construction contended for by appellee would give free insurance to the insured for a lengthy period plainly not intended.

The appellee also makes the point that the dividend of sixteen dollars on the policy, paid by the insurance company to the insured after default in the payment of the premium, should not have been paid to the insured without the consent of the beneficiary, but should have been retained by the insurance company as a reserve and applied in the extension of the insurance after the lapse of the policy. It is our judgment that whatever dividend on the policy was paid to the insured after the lapse should not have been applied to extend the insurance in favor of the beneficiary even though the beneficiary did not receive the dividend nor consent to it being paid to the insured. The policy here involved is one in which the insured had the right to change the beneficiary, and the beneficiary under the contract of insurance had no vested interest in the dividends while the insured was living.

In view of the conclusions reached above, we think the insurance was extended to a time beyond the date of the death of the insured, and that the recovery allowed by the lower court was correct.

The judgment of the lower court is affirmed.

*Affirmed.*